FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 JUL -8 PM 4: 30

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Roy F. Amedee, Jr., | Civil Action No. 03-1533 |
| Plaintiff, | Section "S" |
| vs. | |
| Zimmerman Reed, P.L.L.P., | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO REMAND AND IN SUPPORT OF A STAY ON THE REMAND MOTION

This action arises from a dispute created by Plaintiff over revenue received by lawyers from the *Orthopedic Bone Screw* MDL 1014 litigation. Plaintiff brought this action in Louisiana state court; Defendant removed[1] to this Court. Plaintiff now seeks remand. Plaintiff's motion should be denied–or stayed– on the following grounds:

---

[1]To the extent Plaintiff contends the notice of removal is technically defective, the Court may permit amendment of the notice of removal to correct such technical defects. *Winters Government Securities Corp. v. Nafi Employees Credit Union,* 449 F.Supp. 239 (S.D.Fla.1978); *Jackson v. Metropolitan Life Ins. Co.,* 433 F.Supp. 707 (E.D.Ky.1977); *Handy v. Uniroyal, Inc.,* 298 F.Supp. 301(D.C.Del.1969). To the extent required, Defendant moves to amend its notice of removal to conform to the pleadings filed in this motion.

1

Fee
Process
X Dktd
CtRmDep.
Doc. No.

1.  The MDL Court already has jurisdiction over this dispute, and a Conditional Transfer Order was executed and filed in that case on June 23, 2003.[2]

2.  The jurisdiction of the MDL Court has been invoked in this dispute, by Motion[3] filed directly in that Court, and that motion is pending as of this writing.

3.  This Court should stay its ruling on this remand motion in favor of the MDL Court pending resolution of the motion in the MDL Court.

4.  Defendant should be estopped from denying federal jurisdiction since members of the group of lawyers of which Plaintiff is a member (the "Brown Group")[4] has already invoked federal jurisdiction on these issues in litigation arising in state court in Ohio.

5.  This action is removable based on diversity jurisdiction since Plaintiff seeks the deposit into the court registry of an amount in excess of $75,000.00, and this fact appears in the face of Plaintiff's pleading in state court.[5]

## FACTS

---

[2] A copy of the Conditional Transfer Order is attached hereto and marked as Exhibit "1".

[3] A copy of that Motion is filed as Exhibit "2" to this Memorandum.

[4] The "Brown Group" is a group of loosely affiliated lawyers identified as the attorneys to whom pedicle screw cases were to be referred by referring attorneys. ZR is a referring attorney for these purposes. The Brown Group is comprised of Gauthier, Downing, Labarre, Beiser & Dean, W. High Sibley, Daniel E. Becnel, Jr., Calvin C. Fayard, Jr., Andrea Lestelle, Roy F. Amedee, Jr. and Kenneth Michael Wright. The referral contract purports to award to the Brown Group 50% of all fees–after subtraction of costs. Only Amedee, Lestelle and Wright have, to date, brought actions against ZR.

[5] ZR received revenue from the AcroMed settlement which it applied to ZR's out of pocket expenses incurred in the pedicle screw litigation. Those out of pocket expenses exceeded $730,000. Thus, from the face of the pleading, Plaintiff seeks the deposit into Court in an amount at least $730,000.

2

This is an action by Plaintiff, a lawyer from Louisiana, against a law firm from Minnesota. The situs of the lawsuit giving rise to the claim for fees was Pennsylvania. The clients involved are from many parts of the country, but none are from Louisiana. This case was filed in state court in Louisiana and removed to this Court. Simultaneously a Notice of Tag Along was filed with the Judicial Panel on Multi-District Litigation seeking to transfer this matter to the United States District Court for the Eastern District of Pennsylvania to consolidate it with other cases in *In re Orthopedic Bone Screw Litigation*, MDL 1014. That transfer was granted pursuant to a Conditional Transfer Order on June 23, 2003. In addition, Defendant has filed a motion directly with the MDL Court in Pennsylvania seeking the resolution of the substantive issues raised by Plaintiff in this litigation.[6]

There is a purported referral agreement dated in October, 1994, between Plaintiff–as one member of a group called the "Brown Group" and Defendant. This agreement called for the referral of Defendant's clients to the Brown Group, and an equal division of fees resulting from that referral, after recovery of costs by Defendant. To Defendant's knowledge, Plaintiff never signed this agreement; no one on Plaintiff's behalf ever signed this agreement. The only fees, of consequence, earned in this litigation resulted from the settlement by AcroMed in MDL 1014, *In re Orthopedic Bone Screw Litigation*. **None of Defendant's AcroMed clients were referred to Plaintiff for handling, and Plaintiff performed no services for Defendant's clients in the AcroMed settlement.** Thus, in addition to being unsigned, the purported agreement between the parties was never effectuated. The Agreement may also be terminated if a class is not certified. In the instant case, the only certification ever achieved was the AcroMed Settlement Class as referenced in Pre-

---

[6]See Exhibit "2".

3

Trial Order 1117 of MDL 1014.[7]

In addition, in the MDL Court, the Brown Group was sanctioned for over $112,500.00 as a result of its violation of Rule 11 and its mismanagement of the pedicle screw cases.[8] This mismanagement continued over time. Later, in the MDL, the Plaintiffs' Management Committee ("PMC"), in charge of running the MDL, was able to settle a sizable series of pedicle screw cases with manufacturer Sofamor Danek. These cases settled for $20,000.00 each, resulting in legal fees of over $6,500.00 per case. Defendant represented 150 such clients. Defendant was nominally affiliated with the Brown Group, in the mind of the PMC. As a result of the mismanagement of the cases by the Brown Group, its cases were consciously excluded from the settlement with Sofamor Danek, as engineered by the PMC. As a result, Defendant lost over $450,000.00 in legal fees by virtue of Defendant's mismanagement of the case.

Arising from the litigation of all these cases,[9] Defendant expended approximately $730,000.00 in out of pocket costs litigating these cases on behalf of over 300 clients.[10] Defendant performed these services, not Plaintiff. In December, 2000, Defendant sent a letter to Andrea

---

[7]See attached Order executed by the Honorable Louis Bechtle in MDL 1014 on February 22, 1995, a copy of which is marked as Exhibit "3". See also Pre-Trial Order 1117, attached hereto and marked as Exhibit "4".

[8]A copy of Pre-Trial Order 1018 awarding sanctions against Lestelle & Amedee is attached hereto and marked as Exhibit "5".

[9]Defendant also represents clients in this litigation against several other manufacturers of pedicle screw devices.

[10]Very few litigated pedicle screw cases survived past Daubert or Summary Judgment motions. However, one of Defendant's cases did get to trial–*Staudt v. Artifex*–and was tried in the Eastern District of Wisconsin. No member of the Brown Group participated in that trial. There was a hung jury, and the case ultimately settled for less than the costs of defense.

Lestelle, nominally the administrator of the Brown Group, advising her of these expenses and claiming them as an offset under the purported contract–all as set forth in the contract. No objection was made to this offset, and no further claim for fees was made by the Brown Group until this lawsuit was filed.

It is against this background that Plaintiff now sues Defendant for legal fees allegedly owing. This claim for fees arises from litigation involving pedicle screws. Pedicle screws, more formally known as orthopedic bone screws, were alleged to be defectively designed, and thereby caused injury to the patients who received them. The purpose of pedicle screws is to facilitate spinal fusion. There were approximately eight manufacturers who were the subjects of this litigation. Only one, AcroMed, made any consequential settlement.

The pedicle screw litigation in federal court was consolidated by the Judicial Panel on Multi-District Litigation in MDL 1014. The case was assigned to the Honorable Louis Bechtle, United States District Court Judge for the Eastern District of Pennsylvania, now retired. Judge Bechtle issued many pre-trial Orders, including Pre-Trial Order 1117.[11] Pre-Trial Order 1117 reserved to the United States District Court all issues concerning attorney's fees arising from the pedicle screw litigation. Based on this pre-trial order, Defendant has now invoked the jurisdiction of the MDL Court to resolve the fee dispute raised by Plaintiff and the MDL Court has issued its Conditional Transfer Order. If the MDL Court undertakes to resolve this question, the instant lawsuit should be stayed. Indeed, if the MDL Court undertakes to resolve this question, the issue of federal jurisdiction is answered.

If the MDL Court ultimately does not accept jurisdiction, the federal court still has

_____

[11]See Pre-Trial Order 1117, attached hereto and previously marked as Exhibit "4".

5

jurisdiction based on the face of the pleading by Plaintiff. While the case specifically declares that Plaintiff seeks no more than $74,999.00 in damages, it also seeks the deposit into the Court registry of every dollar received by Defendant on account of the pedicle screw litigation. Since $730,000.00 was recovered by Defendant in out of pocket costs, Plaintiff now seeks the deposit of that amount into the Court registry. Thus, the Court is asked to exercise jurisdiction of an amount well in excess of $75,000.00, thereby permitting the removal of this case on diversity grounds.

## THE MDL COURT HAS EXCLUSIVE JURISDICTION OVER THIS ACTION

The MDL Court in Pre-Trial Order 1117 declared:

> The Court retains continuing and exclusive jurisdiction for the purposes of...the payment of attorneys fees and expenses and awards to Settlement Class Members and matters concerning claims administration and the distribution of settlement funds and payment of related fees and expenses until the effectuation of the Settlement in accordance with the Agreement has been accomplished.

On the face of that Order, the MDL Court has reserved to itself jurisdiction over all aspects of the cases arising from the settlement of the AcroMed claims. To that extent, the MDL Court already **has** jurisdiction over this matter.[12]

Under these circumstances, Plaintiff's reliance on *Sygenta Crop Production v. Henson,* 123 S.Ct. 366 (2002) is misplaced. The removal here is not an effort to invoke new jurisdiction of the Federal Court, but to avail oneself of jurisdiction already in existence. This is not an effort to invoke the All Writs Act, or to bring litigation into another Court pursuant to supplemental jurisdiction

---

[12]To the extent Plaintiff argues that the role of the MDL Court has concluded, the Brown Group which includes Plaintiff took precisely the opposite position before the Ohio Court of Appeals in November, 2002, and continues to maintain that position. See Memorandum on Issues of Jurisdiction and Authorization filed by Fayard, Gauthier & Sibley in the Court of Common Pleas, Cuyahoga County Ohio, Case No. 426704, a copy of which is attached hereto and marked as Exhibit "6".

under 28 USC §1367.  Rather, this is an effort to utilize jurisdiction already claimed by the Federal

Court system.

## THE JURISDICTION OF THE MDL COURT
## HAS BEEN INVOKED ON THIS MATTER

Defendant has, at this writing, filed a motion directly in the MDL Court seeking to resolve

the fee questions raised by Plaintiff in this lawsuit.  The MDL Court will have a direct opportunity

to rule on the jurisdictional questions raised by the Plaintiff's Motion to Remand.  If the MDL Court

decides it has jurisdiction, then the remand issue raised here, as to federal question jurisdiction, is

moot.  If the MDL Court decides it does not have jurisdiction under Pre-Trial Order 1117 directly,

then this Court must decide the remand question raised here.

## THIS COURT SHOULD STAY RULING ON REMAND
## PENDING THE MDL COURT'S DECISION

The MDL Court is the proper Court to interpret its own order about jurisdiction, and then

decide this fee dispute.  This Honorable Court should stay its hand on the remand motion pending

the MDL Court's ruling on the filed motion addressing the merits of this action.  This Court certainly

has the power to stay its own ruling in favor of the MDL Court.  See, e.g., *Lee v. Ford Motor Co.,*

2002 WL 31760252 (E.D. La.  2002).

## PLAINTIFF SHOULD BE ESTOPPED FROM
## DENYING FEDERAL QUESTION JURISDICTION.

An attorney named Michael O'Shea from Cleveland has sued members of the Brown Group

on a claim for fees arising from the AcroMed settlement.[13]   O'Shea initiated a lawsuit against the

Brown Group in state court in Cleveland, Ohio.  The Brown Group moved to dismiss, claiming that

---

[13]O'Shea, whom Defendant has never met or talked to, has also sued Defendant for these
fees on some unknown basis.

jurisdiction was proper only in the MDL Court. The state court in Ohio granted this motion, acquiescing in the position adopted by the Brown Group. See *O'Shea v. Fayard*, No. 426704, Court of Common Pleas, Cuyahoga County, Ohio, wherein the Court found, in its Order dated September 13, 2002:

> This Court lacks subject matter jurisdiction over Plaintiff's Claims as the United States District Court for the Eastern District of Pennsylvania, per Pre-Trial Order 1117 dated 10/17/97 and issued by Judge Bechtle, retains continuing and exclusive jurisdiction over the issues raised in Plaintiff's Complaint.[14]

O'Shea appealed this ruling; members of the Brown Group oppose the appeal. At this writing, the appeal remains pending in the Ohio Court of Appeals for the Eighth Judicial District. In opposing O'Shea's appeal, and in support of the Trial Court's Order, the Brown Group wrote in its appeal brief:

> In the present case, the Trial Court did not error [sic] in dismissing the Complaint for lack of subject matter jurisdiction. The United States District Court for the Eastern District of Pennsylvania has ordered that it retained continuing and exclusive jurisdiction for the purpose of, among other tings, approval of payment of attorneys' fees and expenses and other matters concerning claims pursuant to the AcroMed Settlement...**In the present case, the Trial Court properly dismissed the complaint based on the federal court's continuing and exclusive jurisdiction over the AcroMed Settlement Agreement. Pursuant to a pre-trial order entered by the Judge in the United States District Court for the Eastern District of Pennsylvania, claims for attorneys fees must be submitted to that Court.**

Brown Group Brief at 7,8.[15] The Brown Group's brief on this point is dated November 15, 2002, just a few short months ago. Nothing has happened in the interim to change the facts or posture of the case to change the factual or legal basis for the statements made by the Brown Group to the Ohio Appellate Court.

---

[14]A copy of the Court's Order is attached hereto and marked as Exhibit "7".

[15]A copy of the Appeal Brief is attached hereto and marked as Exhibit "8".

Now, in this lawsuit, the Brown Group, through this Plaintiff, has done an about face, claiming that there is no federal jurisdiction in the MDL Court. The Brown Group cannot have it both ways. Either there is, or there is not, federal jurisdiction. Since the claim was first made that federal jurisdiction does exist, the Brown Group, and this Plaintiff, should be estopped from asserting otherwise.

## THERE IS DIVERSITY JURISDICTION SINCE PLAINTIFF SEEKS THE DEPOSIT INTO THE COURT REGISTRY OF MORE THAN $75,000.00.

There is no dispute that Plaintiff and Defendant have diversity of citizenship. The only dispute is whether there is more than $75,000.00 in controversy. While Plaintiff purports to limit the jurisdiction of the court to $74,999.00, the next paragraph of the petition demands that Defendant deposit into the Court registry **ALL** of the proceeds received by Defendant from the pedicle screw litigation.[15] Plaintiff's Petition states:

> It is further necessary that a rule issue herein directed to the defendant, ordering it to show cause on a date and time to be fixed by this Honorable Court why Zimmerman reed should not be ordered to place into the registry of the Court **all funds** it has receive [sic] from Pedicle Screw cases into the registry of this Court to be disbursed as the Court deems appropriate.

Clearly Defendant received more than $75,000.00, since Defendant claims an offset against revenue received for costs expended in the litigation, which amounts to well more than $75,000.00.

---

[15]Defendant wants to clearly state that neither the state Court nor this Court has been shown the authority to require deposit of these funds into the Court registry on a pre-judgment basis. Indeed, Defendant knows of no such authority.

9

## CONCLUSION

This Court should stay ruling on the Plaintiff's Motion to Remand in light of the Conditional Order of Transfer to MDL 1014. In the alternative, this Court should deny the Motion to Remand and proceed to the trial on the merits.

RESPECTFULLY SUBMITTED,

**LEEFE, GIBBS, SULLIVAN, DUPRÉ & ALDOUS**

JERRY W. SULLIVAN (17159)
3900 North Causeway Blvd.
Suite 1470
Metairie, LA 70002
Telephone: (504) 830-3990


Ronald S. Goldser (MN #35932)
ZIMMERMAN REED, P.L.L.P.
651 Nicollet Mall
Suite 501
Minneapolis, MN 55402
Telephone: (612) 341-0400

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record in this proceeding by

(x )   U.S. Mail, postage prepaid          ( )   facsimile transmission

( )   Hand Delivery                        ( )   Overnight Mail

this 8<u>th</u>  day of July, 2003.

JERRY W. SULLIVAN

Roy F. Amedee, Jr., Esq.
2400 Veterans Blvd.
Kenner, LA 70062

C \Documents and Settings\All Users\Documents\DATA\Z-092ZIMMERMAN REED\Pld247 (Reply to Remand - Amedee) wpd